UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Glenn G. Wattley )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>USA SYNTHETIC FUEL CORPORATION, )<br>GLOBABL ENERGY, INC., HARRY H. )<br>GRAVES, LYNNE R. GRAVES, STEVEN C. )<br>VICK, DWIGHT N. LOCKWOOD, JOHN L. )<br>KELLY, AND J. BRADLEY DAVIS, )<br>)<br>Defendants. )<br>) | CIVIL ACTION NO.<br>10-CA-_____ |

## COMPLAINT AND JURY DEMAND

### Introduction

1. The Plaintiff, Glenn G. Wattley, respectfully brings to this honorable Court an action seeking payment for accrued salary, benefits and related expenses owed to him including damages from USA Synthetic Fuel Corporation and its subsidiaries ("USASF"), Global Energy, Inc., ("GEI"), Harry H. Graves, Lynne R. Graves, Steven C. Vick, Dwight N. Lockwood, John L. Kelly, and J. Bradley Davis (collectively, the "Defendants").

### Parties

2. Mr. Wattley is an individual residing at 215 Bridge Street, Osterville, Massachusetts 02655.

3. USASF and GEI (collectively "Company") are Delaware and Ohio corporations, respectively, with a common headquarters at 312 Walnut Street, Cincinnati, Ohio 45202, (office suites are reported to be: none, 1000, 1600 and/or 2300). The Company is engaged in the development and operation of synthetic natural gas ("SNG") plants that use coal and/or

petroleum coke ("petcoke") as feedstock, in the United States, the United Kingdom, and the Peoples Republic of China. GEI was incorporated October 1988 and is privately held.

4. USASF was incorporated in late 2009 by GEI as an "affiliate" (about 97% of USASF shares are owned by GEI shareholders) to build and operate USA-based SNG plants, including GEI's petcoke-to-SNG project in Lima, Ohio ("Lima project"). USASF subsidiaries include Lima Energy Company and Cleantech Energy Company and related assets.

5. Harry H. Graves is GEI's founder, Chairman of the Board of Directors ("Board"), President and Chief Executive Officer ("CEO"); Chairman of the Board and Chief Financial Officer ("CFO") of USASF. He resides at 2825 Pond Run Road, New Richmond, OH 45157.

6. Lynne R. Graves is the Corporate Secretary of the Company, is married to and reports directly to Mr. Graves. Her address is P.O. Box 54433, Cincinnati, OH 45254.

7. Steven C. Vick is USASF's President, CEO and Board member, and GEI's Chief Technology Officer. He resides at 2525 Stockbridge Drive, Charlotte, NC 28210.

8. Dwight N. Lockwood is Group Vice President of USASF and GEI. He resides 3547 Saybrook Ave., Cincinnati, OH 45208.

9. John L. Kelly is an experienced investment banker and former member of USASF's Board. He resides at 132 Turtle Back Road, New Canaan, CT 06840.

10. J. Bradley Davis is an experienced investment banker and former Board member of USASF and GEI. He is Managing Partner for Ridge Capital Partners, LLC, where his office address is 9 North Liberty Street, Middleburg, VA, 20118.

### Factual Allegations for Context and Background

11. Upon information and belief subject to discovery, Mr. Graves holds the largest block of equity shares in GEI and USASF that enables him to effectively direct and control all

Company business affairs with full cooperation from executives Mrs. Graves, Dr. Vick, and Mr. Lockwood, and Mr. Davis, who also own significant amounts of Company shares.

12. Upon information and belief subject to discovery, given the number of shares owned by Mr. Graves and the interlocking management structures, GEI and USASF are "commonly-controlled entities." From March 2010 through around July 22, 2010, Mr. Graves also controlled the Company with full cooperation of Board members Messrs. Kelly and Davis.

13. Upon information and belief subject to discovery, Mr. Graves, Dr. Vick, and Mr. Lockwood have been unable to finance the Lima project and/or complete a GEI initial public offering (IPO) of shares to raise capital. Mr. Graves, Dr. Vick and Mr. Lockwood are collectively referred to herein as the "old executive team."

14. Upon information and belief subject to discovery, Mr. Graves concluded the Lima Project a "new executive team," that is, a new CEO, CFO and General Counsel to accomplish what GEI's "old team" was unable to do. Additionally, Mr. Graves determined it would be auspicious to incorporate a new company (i.e., USASF) in which to install the new executive team and to transfer all GEI USA-based assets, such as the Lima project and coal properties.

15. Upon information and belief subject to discovery, in late February 2010, Mr. Graves recruited Mr. Wattley and on March 1, 2010 the Plaintiff joined USASF as President and CEO to lead the "new executive team." John B. Walker and Reynold Nebel, Jr., were already employed at USASF as CFO and General Counsel, respectively.

16. Upon information and belief subject to discovery, from March until July 2010 the new executive team worked diligently to negotiate the purchase by USASF of GEI's USA assets and to prepare a Securities and Exchange Commission ("SEC") Form 10 to re-register USASF to

enable the sale of USASF common shares on public securities markets. In lieu of an IPO, Mr. Graves had "taken USASF public" through a reverse merger.

17. Upon information and belief subject to discovery, on July 22, 2010 Mr. Graves sent an email to Mr. Wattley with an attached employment-termination letter dated July 15, 2010. The email and "post-dated" letter surprised Mr. Wattley. It informed the Plaintiff that his employment termination was without cause due to **"unforeseen circumstances"** and that he **was to be paid all salary, expenses and related benefits "accrued through July 31, 2010."** There is no factual dispute that Mr. Wattley was employed and that he is owed money as indicated.

18. Upon information and belief subject to discovery, the Plaintiff sent Mr. Graves demand letters for timely payment of the money owed. Plaintiff's demands have been ignored in violation of Ohio's Wage Statute, Ohio Revised Code ("ORC"). Plaintiff estimates that Defendants owe him approximately $300,000 including legal fees and interest, exclusive of damages and other awards to be determined at the time of trial. Plaintiff alleges he should have been paid in full accrued salary and related expenses by September 30, 2010 at the latest. Plaintiff's recent effort to secure payment and relief has failed, thus he filed this Complaint.

19. Additionally, upon information and belief subject to discovery, Plaintiff is seeking damages and other awards because he accepted USASF employment in good faith based on specific promises and assurances made by Mr. Graves especially. These promises were not met and Mr. Wattley would not have joined or stayed at USASF had he known the Defendants had concealed their true intentions not to keep and not honor promises they made, and to mislead.

20. Furthermore, upon information and belief subject to discovery, Messrs. Walker and Nebel were terminated via July 22, 2010 emails from Mr. Graves with letters dated July 15, 2010. Threfore, Mr. Graves dismissed the "new executive team" at the same time. Plaintiff

alleges the "group termination" was in retaliation to the team's demands of Mr. Graves, Company management and the Board that the <u>USASF SEC Form 10 be completed properly, accurately and in compliance with SEC regulations and the 2002 Sarbanes-Oxley Law ("SOX")</u>.

21.     Upon information and belief subject to discovery, the demands discussed in paragraph 20, which included payments of USASF salaries, were rejected by Messrs. Graves, Lockwood, Kelly and Davis, Mrs. Graves, and Dr. Vick, leading to Plaintiff's and new team members' terminations. Again, Plaintiff and the new team did not want to file a misleading Form 10 because: 1) it was the wrong thing to do under SEC and SOX rules; and 2) it would expose the Company and its executives to reputation and career injury, and personal liability.

22.     Upon information and belief subject to discovery, after terminating the new executive team, Mr. Graves installed himself as USASF's CFO despite his having no prior training in accounting and Dr. Vick as USASF President, CEO and Board member. The General Counsel position was left unfilled.

23.     Upon information and belief subject to discovery, on July 22, 2010, as the new CEO, Dr. Vick filed the "flawed" and misleading USASF SEC Form 10. On July 23, 2010, Mr. Graves – tellingly, not Dr. Vick – withdrew the Form 10 claiming "errors." This withdrawal is sublime proof that Plaintiff and the new team had valid concerns about the "flawed" Form 10. The Form 10 had many unresolved issues, which the new team also brought to the attention of Messrs. Smith and Davis during a conference call on July19, 2010 and in writing July 21, 2010 in hopes that as Board members they would intervene to halt the "misleading" USASF Form 10.

24.     Upon information and belief subject to discovery, in fact, a most serious problem with USASF SEC Form 10 filing was not "an error per se," but rather that Dr. Vick filed the Form 10 <u>without the requisite permission of the independent auditor.</u>

25. Upon information and belief subject to discovery, the deceptive behavior described in paragraph 24 was exacerbated by the fact that Mr. Graves had not paid the auditor's invoice for fees and expenses, approximately $40,000. In fact, the auditor had demanded that his invoice be paid before the Form 10 filing to maintain his independence and objectivity.

26. Upon information and belief subject to discovery, Plaintiff alleges there are numerous examples that show Mr. Graves and the Defendants acted in concert to mislead shareholders and also not fulfill promises to the Plaintiff. Many such examples (i.e., breaches of SEC and SOX rules and fiduciary responsibilities, bad-faith conduct, etc.) will be presented to the Court to demonstrate that in addition to payment of accrued salary and expenses, Plaintiff is entitled to no less than $1,000,000 in damages and awards to be determined at the time of trial.

27. Upon information and belief subject to discovery, Plaintiff further asserts that his termination, in addition to an act of retaliation, **was "unauthorized," in violation of Company Bylaws**. In fact, the termination was made without proper notice and discussion prior to a required Board vote. Therefore, Plaintiff asserts his dismissal was **wrongful termination**.

28. Upon information and belief subject to discovery, tellingly, Messrs. Kelly and Davis resigned from the USASF Board on or around July 22, 2010. This is an important date and event because as Board members on July 15, 2010 when the unauthorized termination took place they were responsible to Mr. Wattley for good-faith disclosure and discussion.

29. Furthermore, upon information and belief subject to discovery, Mr. Wattley alleges that Messrs. Kelly's and Davis' abrupt resignations are obvious <u>attempts to avoid personal liability for their breach of fiduciary responsibilities</u>. They also had responsibility to oversee that management complied with the Corporate Bylaws and SEC and SOX laws/rules.

Their failures to fulfill these responsibilities, especially in light of the fact that the new team reached out to them to halt misleading actions, make them personally liable for payments.

30. Upon information and belief subject to discovery, the Plaintiff alleges that Defendants' repeated deceptive acts have injured him financially including damages to reputation and career. For example, USASF issued a press release about Plaintiff's employment, which generated public media coverage Mr. Graves wanted to show the Company had a new CEO. However, Mr. Graves' <u>sudden, retaliatory, unauthorized and wrongful termination of Plaintiff has had clear negative impacts.</u> Therefore, Plaintiff seeks and is entitled to damages and awards that are no less than $1,000,000 to be determined at the time of trial.

## No Corporate Veils Exist at USASF and GEI

31. Upon information and belief subject to discovery, despite the reverse merger and access to public markets, it is apparent that Mr. Graves and USASF's investment bankers failed to fully capitalize USASF. In fact, essentially all the proceeds of the reverse merger and sales of USASF stock have been to the benefit of GEI and Mr. and Mrs. Graves' personal enrichment; their actions and behavior violate the concept and legality of "corporate veils."

32. Upon information and belief subject to discovery, Mr. and Mrs. Graves personally fund the USASF's business requirements as indicated in the recent quarterly filing (10Q) with the SEC for the period ending September 30, 2010. Most tellingly, USASF financial and cash flow entries on the 10Q reveal that GEI has advanced $148,735 to USASF, and that an "undisclosed shareholder" (presumably Mr. or Mrs. Graves), paid $145,000 of USASF's recent expenses. These cash payments for USASF expenses are proof that <u>there are no corporate veils thus exposing management and directors to personal liability.</u>

33. Upon information and belief subject to discovery, as mentioned above, Mr. Graves controls and directs the Company, which is veritable proof that <u>no corporate veils exist between USASF, GEI, their officers, directors and owners, thus exposing Mr. Graves, Mrs. Graves, Dr. Vick, and Messrs. Lockwood, Kelly and Davis to personal liability for the Company.</u>

34. Upon information and belief subject to discovery, Mr. Graves stated repeatedly to the Company employees that they need not worry about money because he, Mr. Graves, retained total control for bringing funds to the Company. Mr. Graves controlled USASF and GEI and took actions as if <u>no corporate veils exist.</u>

35. For example, upon information and belief subject to discovery, despite asserting his complete control of financing matters, Mr. Graves asked Mr. Wattley to promote USASF shares in a "friends and family" private investment in public entity ("PIPE") program. Mr. Wattley agreed and introduced to Mr. Graves a prospective and interested PIPE investor.

36. Upon information and belief subject to discovery, allegedly, without proper prior disclosure, on April 14, 2010 <u>Mr. Graves diverted the funds received by wire transfer for the USASF shares to a GEI bank account that Mr. Graves controlled.</u> Mr. Graves' alleged act of deception provides evidence of Mr. Graves' efforts "to control" USASF and GEI <u>wherein no corporate veils exist.</u> Mr. Graves operated as if corporate accounts were personal accounts.

37. Upon information and belief subject to discovery, Mr. Wattley confronted Mr. Graves about his deception to misdirect USASF funds to GEI's account. Mr. Graves told Plaintiff not to worry because: 1) he, Mr. Graves, would ensure that all USASF's financial needs would be met including employee salaries; and 2) he wanted "team behavior" from Company executives, that is cooperation of the "old" and "new" executive teams. Mr. Graves stated that there is "no difference between USASF and GEI," <u>reaffirming that no corporate veils exist.</u>

38.     Additionally, upon information and belief subject to discovery, as a result of repeated demands, Mr. and Mrs. Graves made one salary payment to the Plaintiff and Mr. Walker that tellingly came from GEI's bank account, not one of USASF. These payments made by GEI are evidence that there are <u>no corporate veils at the Company</u>.

39.     Finally, upon information and belief subject to discovery, Messrs. Smith and Davis admitted to the new management team during the July 19, 2010 conference call that as USASF's Board members they were aware of Mr. Graves' actions to dominate and control the Company. Thus, Messrs Kelly and Davis clearly <u>enabled Mr. Graves' efforts to control and direct the Company without respect or regard for corporate veils – which did not, or do not, exist</u>.

### Defendants Mislead and Did Not Fulfill Promises Made to Mr. Wattley

40.     Upon information and belief subject to discovery, Mr. Graves recruited Mr. Wattley and as an inducement for Mr. Wattley to accept employment, Mr. Graves promised Mr. Wattley that he (Mr. Graves) would pay Mr. Wattley in a timely manner and in cash.

41.     Upon information and belief subject to discovery, Mr. Graves and the Defendants made misleading statements to Mr. Wattley and did not fulfill promises, as the record shows.

### The Defendants Have Funds Available to Pay Mr. Wattley Money Owed

42.     Upon information and belief subject to discovery, the Defendants have funds to make payment to Mr. Wattley. As mentioned above, Mr. Graves and Mrs. Graves have demonstrated that they indeed produce funds for the Company when needed. Tellingly, Trinity College in Hartford, Connecticut, Mr. Graves' alma mater, recently published an alumni news article about Mr. Graves' business success and wealth. The SEC 10Q filing for the period ending September 30, 2010 indicates funds are available including hundreds of millions of

dollars of assets. Mrs. Graves, Dr. Vick and Mr. Lockwood have personal funds available for payments as do the former Board members, Messrs. Kelly and Davis who have personal wealth.

**For self enrichment, the Defendants are withholding Money owed to Mr. Wattley**

43. Upon information and belief subject to discovery, Mr. Graves and Defendants are withholding money owed to the Plaintiff and such withholding is strictly to enrich the Defendants.

### COUNT I
**(Violation of Ohio Wage Statute, ORC §4113.15)**
**(Against the Defendants)**

44. Mr. Wattley repeats and re-alleges the allegations in paragraphs 1 through 43.

45. The Company's failure to pay Plaintiff's accrued salary and related expenses within an acceptable time following termination of employment constitutes a violation of Ohio Wage Statute, ORC §4113.15.

### COUNT II

**(Violation of Ohio Whistleblower Statute, ORC §4113.52 and SOX Section 806)**
**(Against USASF, GEI and Messrs. Graves, Kelly and Davis)**

46. Mr. Wattley repeats and re-alleges the allegations in paragraphs 1 through 45.

47. Company's termination of Mr. Wattley was retaliatory and in violation of Ohio Whistleblower Statute, ORC §4113.52 and SOX Section 806 that have caused Mr. Wattley to suffer harm and other damages in an amount to be determined at trial.

### COUNT III
**(Violation of Corporate Bylaws)**
**(Against USASF, GEI, Messrs. Graves, Kelly, Davis, Mrs. Graves and Dr. Vick)**

48. Mr. Wattley repeats and re-alleges the allegations in paragraphs 1 through 47.

49. Mr. Wattley's termination was unauthorized and without proper notice violating Corporate Bylaws. Therefore, the termination was wrongful.

## COUNT IV
### (Breach of Contract)
### (Against USASF and Mr. Graves)

50. Mr. Wattley repeats and re-alleges the allegations in Paragraphs 1 through 49.

51. The termination of employment is a breach of written and implied contract.

52. The Company's breach requires immediate payment of money owed, and has caused Mr. Wattley to suffer harm and other damages, in an amount to be determined at trial.

## COUNT V
### (Promissory Estoppel)
### (Against Company and Mr. Graves)

53. Mr. Wattley repeats the allegations in paragraphs 1 through 52.

54. The Company and Mr. Graves promised Mr. Wattley cash compensation, which is well documented and reflected in USASF financial statements filed with the SEC.

55. As hereinbefore alleged, Mr. Wattley reasonably relied on these specific and definite promises to work for the Company until he was terminated in an unauthorized process that violated Corporate Bylaws that required notice, discussion with the Board and a subsequent Board vote if appropriate. Mr. Wattley has been damaged by his reasonable and justified reliance on the definite promises made to him by Mr. Graves and USASF's Board, as hereinbefore alleged.

56. The Company and Mr. Graves are estopped to deny that Mr. Wattley is entitled to compensation for approximately $300,000, plus other consideration, benefits, legal fees, awards and damages alleged herein and to be quantified at trial.

## COUNT VI
### (Quantum Meruit)
### (Against USASF and GEI)

57. Mr. Wattley repeats and re-alleges the allegations in paragraphs 1 through 56.

58. The services Mr. Wattley performed for the Company during his employment conferred a measurable benefit on USASF and GEI.

59. Upon information and belief subject to discovery, USASF accepted the services Mr. Wattley performed, with the promise and expectation of compensating Mr. Wattley in full for those services rendered. Mr. Wattley performed the services for USASF with the reasonable expectation of receiving full and timely compensation from USASF in exchange for his services.

60. USASF and GEI are required to compensate Mr. Wattley for the reasonable value of his services and related expenses and benefits.

### COUNT VII
### (Unjust Enrichment)
### (Against Company, Mr. Graves, Mrs. Graves, Dr. Vick and Mr. Lockwood)

61. Mr. Wattley repeats and re-alleges the allegations in paragraphs 1 through 60.

62. USASF, GEI, Mr. Graves, Mrs. Graves, Dr. Vick, and Mr. Lockwood have been unjustly enriched by obtaining the benefit of Mr. Wattley's experience, contacts and services which Mr. Wattley brought to the Company.

63. Justice requires that the Defendants compensate Mr. Wattley in an amount measured by their unjust enrichment.

### PRAYER FOR RELIEF

WHEREFORE, Mr. Wattley prays to this honorable Court to:

A. Enter a judgment in his favor against the Defendants for violation of the Ohio Wage Act and SOX under Count I of the Complaint, in an amount to be determined at trial, which sum should be trebled with an award of court costs and attorney's fees;

B. Enter a judgment in his favor against the Defendants on Count II through VII of the Complaint, in an amount to be determined at trial; and

C. Grant Mr. Wattley other relief as is appropriate.

## JURY DEMAND

Mr. Wattley claims his right to a trial by jury on all the issues and claims so triable.

Respectfully submitted under pains and penalties of perjury,

GLENN G. WATTLEY,

Dated: December 21, 2010

Plaintiff Pro Se